G. RAYMOND GAVERY, d/b/a Lakewood Medical Center, Plaintiff-Appellant, v. THE COUNTY OF LAKE *et al.,* Defendants-Appellees.

Second District No. 2—86—1202

Opinion filed September 16, 1987.

762

Bogdan Martinovich and C. Jeffrey Thut, both of Ray & Glick, Ltd., of Libertyville, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (John W. Bartels IV, Assistant State's Attorney, of counsel), for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Dr. G. Raymond Gavery, sued defendants, the County of Lake and Roger D. Sloot, for libel. The circuit court dismissed the complaint on the grounds that the suit was barred by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*).

Plaintiff appeals, contending that the Act does not apply to Sloot, since he was merely performing a ministerial task, and that the Act is unconstitutional as applied to defendant County of Lake.

According to the allegations of the complaint, plaintiff is the owner, operator and primary physician of the Lakewood Medical Center. Defendant Sloot is the personnel director of the Lake County Department of Human Resources. On March 8, 1985, Sloot circulated a letter to Lake County employees who belonged to the HAP/HMO, advising them that they would no longer be able to select Lakewood as a health care provider. The letter referred to a number of complaints from county employees regarding the clinic, including "misdiagnosed medical problems, non-referrals to specialists" and patients "being released from the hospital too soon." The letter informed the employees that they would have the option of remaining with HAP/HMO and choosing another provider, switching to another HMO, or opting for

traditional health insurance.

On March 4, 1986, plaintiff filed a one-count complaint in the circuit court of Lake County against Sloot and the county. The complaint alleged that Sloot's letter falsely accused plaintiff of committing medical malpractice on county employees and sought damages for harm to plaintiff's reputation. Defendants moved to dismiss the complaint. The county relied on section 2—107 of the Act, which provides that "[a] local public entity is not liable for injury caused by any action of its employees that is libelous or slanderous." Ill. Rev. Stat. 1985, ch. 85, par. 2—107.

Sloot argued as a ground for dismissal section 2—201 of the Act. Section 2—201 provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Ill. Rev. Stat. 1985, ch. 85, par. 2—201.)

The court dismissed the complaint as to both defendants, and plaintiff appeals.

■■■ Plaintiff first contends that section 2—201 is not applicable to defendant Sloot because sending the letter was a ministerial, rather than discretionary, act. Public officials are immune from liability for acts falling within their official discretion. (Ill. Rev. Stat. 1985, ch. 85, par. 2—201; *People v. Patrick J. Gorman Consultants, Inc.* (1982), 111 Ill. App. 3d 729, 731.) Discretionary acts have been defined as those "which are unique to the particular public office and not merely ministerial in nature." (111 Ill. App. 3d 729, 731.) Conversely, ministerial acts are those "which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority," and without reference to the official's discretion as to the propriety of the act. *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977.

■■ The parties have not referred us to any case in which the writing of a letter similar to the one in question was considered.[1] From the above definitions, however, we think that writing the letter was clearly a discretionary act on the part of Sloot. As county personnel director, the administration of county health insurance benefits would clearly fall within his area of responsibility. The complaint does not allege that Sloot sent the letter pursuant to any statute, ordinance, court decision, or administrative directive. It does not allege that Lake County had

---

[1]The letter is reproduced on page 768.

any policy requiring such an action to be taken. Rather, Sloot was responding to what he perceived to be a problem regarding county medical benefits. We conclude that sending the letter was a discretionary action within the scope of defendant's duties as county personnel director, and was therefore within the scope of section 2—201.

We next consider plaintiff's argument that section 2—107 of the Act, applicable to the county, is unconstitutional. In this regard, plaintiff first argues that section 2—107 violates the equal protection clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, sec. 2), as well as the Illinois Constitution's prohibition against special legislation (Ill. Const. 1970, art. IV, sec. 13). As the analysis under both the equal protection clauses and the special legislation clause is identical (*People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 259), we consider both these claims together.

Defendant correctly points out that section 2—202 of the Act provides immunity from liability for torts committed by public officials in enforcing or executing a law, but creates an exception for conduct constituting wilful or wanton negligence. (Ill. Rev. Stat. 1985, ch. 85, par. 2—202). Section 2—107, relating to libel and slander, contains no such exception. Defendant suggests that this scheme offends all three constitutional provisions because it creates two classes of tort victims: "Those whose lives and property are destroyed by the wilful and wanton acts of a government employee by conduct or omission and those whose lives and property are destroyed by wilful and wanton acts of government employees through words. The former has a legal remedy, the latter does not."

Virtually any statute creates some type of classification. Such legislative classifications are permissible as long as they have a reasonable basis. (*People ex rel. Skinner v. Hellmuth, Obata, & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 259.) The classifications are not required to be drawn with mathematical precision so long as they accomplish the legislative purpose. (*Dandridge v. Williams* (1970), 397 U.S. 471, 485, 25 L. Ed. 2d 491, 501-02, 90 S. Ct. 1153, 1161; *Chicago National League Ball Club, Inc. v. Thompson* (1985), 108 Ill. 2d 357, 372.) Furthermore, a legislative distinction will not be considered arbitrary if any state of facts can reasonably be conceived to sustain it. (*People ex rel. Vermilion County Conservation District v. Lenover* (1969), 43 Ill. 2d 209, 217.) The burden of proving the arbitrariness of the provision is on the person challenging it. (43 Ill. 2d 209, 219.) Plaintiff has failed to meet that burden in this case.

In *Molitor v. Kaneland Community Unit District No. 302* (1959),

18 Ill. 2d 11, 25, *cert. denied* (1960), 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955, the supreme court judicially abolished common law sovereign immunity in Illinois. The Illinois Constitution of 1970 likewise abolished sovereign immunity, except "as the General Assembly may provide." (Ill. Const. 1970, art. XIII, sec. 4.) The legislature has in fact provided for governmental immunity in a number of enactments, including the Local Governmental and Governmental Employees Tort Immunity Act. As defendant points out, these various schemes do not provide for immunity on the same terms for all acts of public officials. This alone, without more, does not make the legislative scheme constitutionally infirm.

■ In the instant case, a number of possible explanations could reasonably account for the legislative distinction of which plaintiff complains. The legislature could reasonably have concluded, as defendants suggest, that so many governmental functions are conducted through paperwork that scrutinizing every letter and document for potentially libelous material would bring the process of government to a standstill. The legislature could also have concluded that the potential damage to individuals from governmental actions, as opposed to words, is much greater. Or the General Assembly could simply have recognized that speech receives special protection under the first amendment, while actions do not. We need not decide which, if any, of these rationales the legislature had in mind in enacting section 2—107, since all that is required is any set of facts which could reasonably sustain the classification. We conclude that the distinction drawn by section 2—107 has a reasonable basis and is not arbitrary.

■ Plaintiff cites *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60, 65, for the principle that the legislature may not constitutionally distinguish between different classes of tort victims. That case is distinguishable. In *Harvey*, the plaintiff minor was injured on a slide maintained by defendant park district. The legislative scheme employed at the time provided for complete immunity for torts committed by park districts and forest preserve districts, liability only within prescribed limits for school districts, and unlimited liability for cities and villages. The court held that, from the viewpoint of the injured plaintiff, the scheme providing different levels of recovery based on the type of governmental unit involved was arbitrary. (32 Ill. 2d 60, 65.) The court noted that the recovery of a plaintiff struck by a truck would depend solely upon what type of governmental entity happened to own the truck. In the instant case, the blanket immunity for libel and slander applies to all governmental entities. The classification is based solely on the type of governmental activity rather than the identity of

the unit responsible for the activity. Courts give particular deference to classifications based on activities rather than status. (*People ex rel. Skinner v. Hellmuth, Obata & Kassabaum, Inc.* (1986), 114 Ill. 2d 252, 261.) Section 2—107 is not unreasonable on this basis.

██ Plaintiff's final argument is that section 2—107 violates the due process clauses of the United States and State constitutions, as well as article I, section 12, of the Illinois Constitution. Article I, section 12, provides:

"Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation." (Ill. Const. 1970, art. I, sec. 12.)

Plaintiff's arguments under the due process clauses also apparently relate to the lack of a remedy for the particular wrong he has suffered. The Illinois Supreme Court has held on at least two occasions that article I, section 12, is merely the expression of philosophy and does not mandate that any particular remedy be provided in any specific form. *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 383; *Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277.

Section 2—107 also does not violate the due process clauses. The requirements of due process are met if the law bears a reasonable relationship to a proper legislative purpose and is neither arbitrary nor discriminatory. (*Kidd v. Industrial Com.* (1981), 85 Ill. 2d 534, 538.) As we have already determined that section 2—107 is reasonably related to a legitimate purpose and does not arbitrarily discriminate, we need not consider this issue further.

██ ██ Nonetheless, plaintiff argues for the first time in his reply brief that the right to be free from injuries to one's reputation is a fundamental right, thus requiring the validity of section 2—107 be tested by the heightened standards of strict scrutiny. The sole authority for this argument is the listing of "reputation" among the injuries in article I, section 12. A contention raised for the first time in a reply brief will be deemed waived. (107 Ill. 2d R. 341(g); *Renfro v. Allied Industrial Equipment Corp.* (1987), 155 Ill. App. 3d 140, 163.) On the merits, we note that article I, section 12, also lists "person," and "property." It has repeatedly been held that similar rights under the due process clause are not fundamental rights. (See, *e.g., Dandridge v. Williams* (1970), 397 U.S. 471, 485, 25 L. Ed. 2d 491, 501, 90 S. Ct. 1153, 1161.) Furthermore, since article I, section 12, has been held to state only a philosophy, rather than a mandate, we decline to hold that it creates fundamental rights in the interests listed.

In conclusion, we hold that section 2—107 of the Local Governmental and Governmental Employees Tort Immunity Act is constitutional.

We also hold that defendant Sloot was performing a discretionary function in circulating the instant letter. Therefore, the trial court was correct in dismissing plaintiff's complaint, and its judgment is affirmed.

Affirmed.

.REINHARD and DUNN, JJ., concur.

County of Lake
Department of Human Resources
Cliff Van Dyke, Administrator
18 North County Street
Waukegan, Illinois 60085
(312) 689-6490

March 8, 1985

TO: EDWARD HALEY 601

FROM: Roger D. Sloot
 Personnel Director

RE: HAP/HMO Lakewood Libertyville/Gurnee/Waukegan Medical Group

Over the past year the County and a number of its employees have incurred numerous problems with the Lakewood Medical Group of HAP/HMO. The complaints and concerns range from unhappy with service, misdiagnosed medical problems, non-referals to specialists, long waiting time at the clinic, high turnover of doctors, being released from the hospital too soon, not having a choice between Condell or St. Theresa for delivery of babies, phone calls not returned; the list goes on and on.

The County has attempted to rectify the problems through the HAP representatives on numerous occasions, however, the situation still remains.

The County and its employees pay large premiums for medical services from the Lakewood Medical Group that, in our opinion, are substandard to other County medical insurance benefits. Therefore, the County has made the decision to drop the Lakewood Medical Group as a provider for medical services for Lake County employees.

To facilitate the change over, you will be required to choose one of the following alternate medical insurance programs:

 1. Remain with HAP/HMO but change to another provider group i.e.
 Vernon Hills, Highland Park, etc.

 2. Change to Compass/HMO.

 3. Change to John Hancock.

The enrollment period for the change over will be from March 11, 1985 to March 29, 1985 with an effective date of the coverage to be May 1, 1985.

It is important that you contact the Department of Human Resources/Personnel either personally or by phone (689-6490) before the March 29, 1985 deadline.

We regret the inconvenience caused, however, we feel the decision will benefit both the County and the employees now at the Lakewood Medical Group.

C0000006

EXHIBIT "A"
—4A—