ANGELA E. WHITE, Plaintiff-Appellant, v. THE VILLAGE OF HOMEWOOD *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—95—0961

Opinion filed November 26, 1996.

Anthony Fornelli and Richard Belmonte, both of Chicago, for appellant.

Ancel, Glink, Diamond, Cope & Bush, P.C., of Chicago (Robert Bush and Brian Mack, of counsel), for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This is the second appeal involving these parties. *White v. Village of Homewood*, 256 Ill. App. 3d 354, 628 N.E.2d 616 (1993), *appeal denied*, 155 Ill. 2d 577, 633 N.E.2d 16 (1994) (*White I*). In *White I*, this court reversed the circuit court's order granting defendants' motion to dismiss and remanded the case with instructions. The present appeal emanates from that remandment.

Plaintiff Angela White sued defendants, Village of Homewood (Homewood) and Village of Homewood Fire and Police Commission, for injuries sustained in a fall from horizontal bars she was climbing in pursuance of a firefighter's physical examination. The circuit court granted Homewood's motion for summary judgment. White appeals, arguing that a special duty exception to the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1994)), if satisfied, would allow her to recover damages from defendants, raising a genuine issue of material fact and precluding summary judgment.

In 1990, White responded to an advertisement in a local newspaper, which sought applicants for the position of firefighter with the Homewood fire department. She completed an employment application. She knew she would have to take a physical agility test that applicants must pass in order to be considered for the firefighter position. Just before taking the test, White signed an agreement releasing Homewood from liability for any injuries that might occur during the test.

On June 16, 1990, White and 74 other applicants arrived at the Homewood fire department to take the physical agility test. The test required applicants to display strength, stamina, and the ability to perform under conditions resembling an actual fire. There were several stations prepared for the exam at which applicants were required to perform specific exercises. At the first few stations, applicants performed sit-ups, squat thrusts and chin-ups, and had to lift and carry a 200-pound dummy without allowing any portion of the dummy to touch the ground. A fifth exercise involved lifting and carrying a pail filled with rocks.

At station number six the exercise involved climbing up a vertical ladder, which intersected with a 15-foot-long horizontal ladder, and then climbing across the horizontal ladder, which was suspended approximately eight feet from the ground. During the exercise, White's hands slipped off the bars of one of the ladders, and she fell several feet to a mat placed on the floor under the ladders. White sustained injuries to her wrist and elbow.

On December 10, 1990, White filed suit against Homewood, alleging that Homewood's fire department conducted the physical agility test in a negligent manner. On March 7, 1991, Homewood moved to dismiss pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615 (now 735 ILCS 5/2—615 (West 1994))), for failing to plead facts demonstrating the existence of a duty owed White, as well as a breach of that duty.

White subsequently filed an amended complaint containing four counts and joining a second defendant, the Village of Homewood Fire and Police Commission (Commission),[1] which administered the physical agility test. Homewood's second section 2—615 motion to dismiss all counts was granted with respect to three of the four counts, allowing White to pursue a claim only for ordinary negligence.

Homewood next filed a third motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)), alleging that the release signed by White before she took the physical agility test barred her claim. White argued that Homewood furnished no consideration for the agreement, rendering the release unenforceable. The circuit court granted the motion, however, and dismissed White's claim with prejudice. On appeal, this court reversed the circuit court's decision, holding the release unenforceable for lack of consideration. This court also found that the agreement violated public policy, in that plaintiff was forced to sign it in order to take the physical agility test, and the release placed White "at the mercy of her potential employer's negligence." *White I*, 256 Ill. App. 3d at 359. The circuit court was instructed to reinstate the ordinary negligence count.

On remand, Homewood filed an answer and several affirmative defenses. First, Homewood claimed that White's own negligence proximately caused her injuries, entitling Homewood to a reduction in any damages that might be awarded White or no recovery at all. Additionally, Homewood referred to four sections of the Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 1994)) (Act), each of which assertedly granted it immunity against White's claim.

Homewood first looked to section 3—102(a) (745 ILCS 10/3—102(a) (West 1994)) as a defense. Section 3—102(a) immunizes any public entity against liability for injuries occurring on its property, unless the public entity had actual or constructive notice of the existence of an unreasonably unsafe condition on the premises. Homewood argued that it had no actual or constructive notice of any

---

[1]The same attorneys represent both defendants, and all claims and defenses apply equally to Homewood and the Commission.

unreasonably dangerous condition at the fire station, and that under this statute it could not be liable for White's injury.

Homewood next offered section 3—108(a) as support for its immunity argument. 745 ILCS 10/3—108(a) (West 1994). Section 3—108(a) immunizes local public entities and public employees against liability for injuries resulting from a "failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1994). Interpreting this provision, Homewood contended that its administration of the physical agility test constituted a supervisory function. As a result, it could not be liable to White for any failure to properly supervise her activities while taking the test.

Homewood also relied on section 2—201, taken together with section 2—109, as additional support for its immunity defense. 745 ILCS 10/2—201 (West 1994). Section 2—201 grants public employees immunity against liability for injuries resulting from an employee's exercise of discretion, even when the discretion is abused. Section 2—109 immunizes a public entity against liability for any activities for which its employees would not be liable. 745 ILCS 10/2—109 (West 1994). Homewood asserted that the administration of the physical agility test was discretionary and therefore immunized, precluding any liability to White for her injuries.

Lastly, Homewood offered as support for its immunity argument section 2—202 (745 ILCS 10/2—202 (West 1994)), which immunizes public employees against liability for acts or omissions that occur while executing and enforcing the law, unless the employee's conduct is willful and wanton. Homewood claimed that this provision applied to the present case because state law requires the Commission to test the physical skills of all applicants to the fire department. See 65 ILCS 5/10—1—7 (West 1994). Furthermore, Homewood noted that it passed a regulation requiring a physical agility test in order to enforce the state statute. Homewood reasoned that it was executing and enforcing the state law and its own regulation in administering the test, and that section 2—202, considered with section 2—109, immunized Homewood against liability for White's injuries.

After raising these affirmative defenses, Homewood moved for summary judgment. Because the Act precludes White from recovering any damages, Homewood argued, it was entitled to judgment as a matter of law. Alternatively, Homewood insisted that even if the Act did not apply, summary judgment should be granted because the danger of falling from the horizontal ladder was apparent, and White viewed the apparatus before climbing and therefore could appreciate the danger. Illinois law imposes no duty to warn White of any apparent danger.

White responded, arguing that all the cases cited by Homewood in support of the motion were distinguishable and, in the alternative, White posited that the language in those decisions actually supported her position. White invoked the "special duty" exception to the Act, recognized in Illinois case law.

White also contended that public policy supported her position. Even if the risk of danger from taking the physical agility test was apparent, she was obligated to take the test in order to become a firefighter, and she needed the job because she was out of work; because Homewood exerted full control over and responsibility for the test, it should not be allowed to expose applicants to "unnecessary dangers." Homewood knew when it created the test that not all the applicants would be able to pass it or even complete it; and Homewood had a duty to exercise reasonable care and ensure that the test was safe for all applicants.

Following a hearing on Homewood's motion for summary judgment, the circuit court found that the conduct at issue could be considered either discretionary or supervisory, concluded that the Act applied, and granted Homewood's motion. At the hearing, neither the parties nor the court addressed application of the special duty exception to this case.

I

■ A reviewing court exercises *de novo* review when determining whether the circuit court properly granted a motion for summary judgment. *Zoeller v. Augustine*, 271 Ill. App. 3d 370, 374, 648 N.E.2d 939 (1995). All evidence will be construed favorably to the nonmoving party and strictly against the moving party. *Gatlin v. Ruder*, 137 Ill. 2d 284, 293, 560 N.E.2d 586 (1990); *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 614, 663 N.E.2d 1 (1996). Reversal is warranted if, on review of the case, a material issue of fact or an inaccurate interpretation of the law exists. *Zoeller*, 271 Ill. App. 3d at 374.

II

The parties first dispute whether a genuine issue of material fact exists regarding two elements of White's negligence claim. Homewood contends that White failed to establish that Homewood owed White a duty or that Homewood's alleged negligence proximately caused White's injury. White insists that the record "clearly reveals" the existence of issues of material fact.

We need not decide this issue, however, because the Act clearly precludes White from pursuing her claim, entitling Homewood to judgment on the merits.

## III

White presents a different approach in her argument on appeal as to the application of the Act. When arguing before the circuit court, White denied the application of the Act to her case. In her response to Homewood's motion for summary judgment, White briefly raised the issue of whether the special duty exception also applied. On appeal, however, White apparently concedes the relevance of the Act to this case; she does not even mention the statute in her brief. Instead, White bases her argument solely on the special duty exception.

In contrast, Homewood claims, as it did in its summary judgment motion, that sections 2—201, 3—108(a), and 2—202 of the Act each offer Homewood immunity against White's claim. White did not file a reply brief addressing this argument.

■ As Homewood succinctly notes in its brief, White waived the question of the Act's application on this appeal by failing to raise it in her brief. According to Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), any issues not raised by appellant in her brief "are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Even if White had properly raised this issue, however, both the language of the Act and cases interpreting it establish that the Act controls this case and offers Homewood immunity absent an exception.

■ Section 2—201 of the Tort Immunity Act provides:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1994).

This provision immunizes public officials from liability for injuries caused by any acts that fall within their official discretion. *Anderson v. Village of Forest Park*, 238 Ill. App. 3d 83, 92, 606 N.E.2d 205 (1992); *Gavery v. County of Lake*, 160 Ill. App. 3d 761, 764, 513 N.E.2d 1127 (1987). This grant of immunity to public officials is based upon the idea that public officials should be allowed to exercise their judgment without fear that a good-faith mistake might subject them to a lawsuit. *Midamerica Trust Co. v. Moffatt*, 158 Ill. App. 3d 372, 376, 511 N.E.2d 964 (1987). In addition, under section 2—109 of the Act, the public entity employing that official also will be held not liable for the official's discretionary conduct. 745 ILCS 10/2—109 (West 1994). Therefore, if administration of the physical agility exam by the Commission's employees is found to be discretionary, then under

sections 2—201 and 2—109 defendants cannot be liable to White for her injuries.

Discretionary acts include conduct unique to a particular public office and are not merely ministerial in nature. *Gavery*, 160 Ill. App. 3d at 764; *Midamerica*, 158 Ill. App. 3d at 376. Discretionary acts require the exercise of judgment and skill and can be characterized as governmental. *Midamerica*, 158 Ill. App. 3d at 376. In contrast, ministerial acts involve conduct performed according to a given state of facts and an established method. Ministerial conduct occurs in compliance with a legal mandate and without any reference to an official's discretion regarding the appropriateness of the conduct. *Anderson*, 238 Ill. App. 3d at 94; *Greeson v. Mackinaw Township*, 207 Ill. App. 3d 193, 200-01 (1990); *Gavery*, 160 Ill. App. 3d at 764.

■ In the present case, the administrators of the physical agility examination are entitled to immunity under section 2—201. Their immunity also renders Homewood immune from liability under section 2—109. The administrators of the examination acted pursuant to legal authority. State law requires Homewood to make rules establishing qualifications for the appointment of firefighters. 65 ILCS 5/10—1—7 (West 1994). In carrying out that authority, Homewood passed rules requiring all applicants for the firefighter position to pass a physical agility examination in addition to meeting other requirements. The administrators of Homewood's firefighter's examination exercised discretion in deciding the components of the exam, as well as the necessary level of physical strength and stamina that would be required of each applicant in order to pass the test. The administrators also used personal judgment in deciding the number and complexity of physical skills that applicants must master. This exercise of independent judgment qualifies as discretionary, and section 2—201 provides immunity for these discretionary actions.

In light of our disposition set forth above, we need not consider the applicability of sections 2—202 and 3—108(a) to these facts.

White argues nevertheless that Homewood's conduct in administering the physical agility test renders it liable under the special duty exception to the Act. Homewood counters this argument by claiming that White did not establish all the requisite elements of the exception. Alternatively, Homewood contends that the special duty exception cannot be applied to this case because the Act does not incorporate the exception within its terms.

■ The special duty doctrine is a common law exception to the concept of governmental immunity. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 507, 565 N.E.2d 654 (1990), *overruled in part by McCuen v. Peoria Park District*, 163 Ill. 2d 125, 643 N.E.2d 778

(1994). A common law principle applied in conjunction with the Act states that municipalities cannot be held liable in tort to members of the general public for negligently exercising municipal authority for a governmental purpose. *Burdinie,* 139 Ill.. 2d at 507-08. The special duty rule, however, provides that where a special relationship arises between the municipality and a specific person, the municipality will owe a special duty toward that person and can be liable for the negligent failure to carry out that duty. 139 Ill. 2d at 508.

A special duty has been found to exist where a plaintiff meets four requirements: (1) the municipality must be uniquely aware of the particular danger or risk to which plaintiff is exposed; (2) plaintiff must allege specific acts or omissions on the part of the municipality; (3) the specific acts or omissions must be affirmative or willful in nature; and (4) the injury must occur while plaintiff is under the direct and immediate control of employees or agents of the municipality. *Burdinie,* 139 Ill. 2d at 508; *Galuszynski v. City of Chicago,* 131 Ill. App. 3d 505, 507, 475 N.E.2d 960 (1985); *Bell v. Village of Midlothian,* 90 Ill. App. 3d 967, 970, 414 N.E.2d 104 (1980).

■ White urges that because Homewood designed the physical agility test, arranged the equipment used to take the test, and placed a mat underneath the horizontal ladder, it proved its unique awareness of the dangerousness of the test. In addition, White offers several examples of specific acts or omissions on the part of the Commission: it required the five female applicants to take the same physical fitness test as the 70 male applicants; it required plaintiff to perform several upper body strength tests consecutively without allowing her adequate time to rest between each test; it placed the horizontal ladder nine feet above the ground; it failed to warn White that the bars were dangerous and unsafe; and it allowed White to use the horizontal bars when it knew or should have known the bars were dangerous and unsafe. White claims these actions constituted affirmative or willful conduct. Lastly, White maintains that her injury occurred while she was under the direct and immediate control of employees or agents of the Commission.

The cases cited by White as support for her argument contain facts significantly dissimilar from the present case. In *Gardner v. Village of Chicago Ridge,* 71 Ill. App. 2d 373, 219 N.E.2d 147 (1966), for instance, plaintiff called the police after four men attacked and beat him. The police officers apprehended the men on a local highway and brought plaintiff there to identify them. The men then attacked plaintiff again in the presence of the police officers. 71 Ill. App. 2d at 375. The *Gardner* court explained that by bringing plaintiff to the place where they apprehended the men and placing plaintiff in a "po-

sition of peril," the police owed plaintiff a special duty. The court held that the police breached this duty by failing to restrain the men from attacking plaintiff. 71 Ill. App. 2d at 378-80.

A municipality was found liable when police officers imposed unreasonably dangerous risks upon a private citizen in *Brooks v. Lundeen*, 49 Ill. App. 3d 1, 7, 364 N.E.2d 423 (1977). There, police officers set up a road block in order to catch a car traveling at speeds of 85 to 100 miles an hour. The officers ordered plaintiff's decedent, who drove up to the roadblock, to park his car on the shoulder, but did not tell him why he needed to do so. A few minutes later, the speeding car collided with decedent's car on the shoulder, killing him. 49 Ill. App. 3d at 4-5. The *Brooks* court held that plaintiff presented sufficient evidence for a jury to find the existence of a special duty owed plaintiff's decedent and a violation of that duty. Specifically, the court pointed to the fact that the officers failed to warn decedent of the dangerous situation and failed to allow him to choose to park in a safer place. 49 Ill. App. 3d at 7. More recently, this court similarly concluded that firefighters who "instructed, directed, and encouraged" plaintiff, who had no experience or training in fighting fires, to aid them in opening an elevator door in a burning building, owed a special duty to plaintiff. *Anthony v. City of Chicago*, 168 Ill. App. 3d 733, 738, 523 N.E.2d 22 (1988), *appeal denied*, 123 Ill. 2d 555, 535 N.E.2d 398 (1988). The court held that the City of Chicago, which employed the firefighters, would be liable to plaintiff for any injuries resulting from a breach of that duty.

The most significant distinction between the facts of *Gardner*, *Brooks*, and *Anthony* and the facts in the present case is the voluntary nature of plaintiff's actions. In the former, a police officer or other governmental official in a position of authority ordered plaintiff to take specific actions. In the present case, however, White voluntarily agreed to take the physical agility test. Furthermore, in *Gardner*, *Brooks*, and *Anthony*, plaintiffs established the first element of the special duty exception by showing that defendants possessed information about the situation that they did not share and that the injured parties could not have obtained. In *Gardner*, the police officers did not tell plaintiff that the men who attacked him had not yet been handcuffed or otherwise restrained and still posed a threat to plaintiff. Similarly, in *Brooks*, the police officers did not tell plaintiff's decedent that a dangerous, speeding car was approaching the intersection. Moreover, in *Anthony*, the firefighters did not explain to plaintiff the skills that might be necessary to perform the job of firefighting. In contrast, in the case *sub judice*, White clearly could see the height of the ladder and the thickness of the mat beneath the

ladder. She faced no hidden danger such as a speeding car, an aggressive man, or a dangerous fire. Because of the voluntary nature of her actions and the lack of any hidden potential for injury, White cannot prove that Homewood placed her in an unreasonably dangerous situation or "position of peril."

The fact that the Commission developed and set up the physical agility test may have made the Commission more knowledgeable about the equipment being used, but does not establish that Homewood was uniquely aware of any particular danger to White. "Superior knowledge, in and of itself, does not create a duty." *Burdinie*, 139 Ill. 2d at 522. In *Burdinie*, plaintiff registered to participate in adult swimming classes at defendant's recreational sports complex. At the instructor's direction, plaintiff jumped into the shallow end of the pool, suffering injuries. 139 Ill. 2d at 505. Plaintiff argued that the instructor, with his superior knowledge and experience, should have known to instruct a beginning swimmer that jumping into a shallow end of the pool was dangerous. The *Burdinie* court disagreed, declaring that such a rule would allow the special duty exception to swallow the general rule of nonliability. The court noted that if this rule became law, any municipality that employed someone with superior knowledge or experience would be held liable for injuries arising from any instructions related to the employee's expertise. 139 Ill. 2d at 522.

In addition, the *Burdinie* court found that plaintiff failed to satisfy the fourth requirement of the special duty exception, that plaintiff suffered injuries while under the direct control of defendant. 139 Ill. 2d at 525. The court held that although the swimming instructor occupied a position of responsibility, he did not exercise direct and immediate control over plaintiff. The court distinguished cases such as *Anthony, Gardner*, and *Brooks*, noting that those decisions involved police or fire protection. In such cases, the municipal employees by their nature are cloaked with state authority, making any refusal to obey an order or suggestion very difficult for the average citizen. The court noted that a recreational swimming instructor did not enjoy the same authority, and plaintiff easily could have refused to jump into the pool. 139 Ill. 2d at 525. The *Burdinie* court distinguished those cases by pointing out the voluntary nature of plaintiff's actions, in contrast to the involuntary nature of plaintiffs' actions in *Anthony, Gardner*, and *Brooks*.

The present case parallels *Burdinie*. White voluntarily took the physical agility test and could have refused to take any portion of the test if she wished. As in *Burdinie*, she failed to offer evidence that the horizontal ladder was particularly dangerous, other than to point

out that it rose eight to nine feet above the floor and that there was a three-inch mat underneath. As in *Burdinie,* the height of the ladder and the thickness of the mat do not exhibit the level of danger found in the *Anthony, Gardner,* and *Brooks* decisions. In addition, under *Burdinie,* Homewood cannot be held liable simply because its employees set up the test and instructed White on how to take it.

White does not allege that she involuntarily applied for the firefighter position and does not show that she could not obtain another, less dangerous job. She eagerly and voluntarily applied for the firefighter position, knowing that it might be a dangerous job. White also knew from reading the notice advertising the position that she would be required to take a test to prove she was physically capable of handling the dangers inherent in the position. White has failed to show that she was compelled in any way to take the physical agility test and therefore may not invoke the special duty exception. The Act prevents her from pursuing her claim. The circuit court properly granted Homewood's motion for summary judgment as a matter of law because White may not recover any damages from Homewood resulting from her injuries.

For the reasons aforesaid we must affirm.

Affirmed.

SCARIANO and DiVITO, JJ., concur.