9 May 2000

NO. 5-99-0225

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

CONNIE HARRISON, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant, )  Hardin County.

)

)  No. 96-L-10

)

HARDIN COUNTY COMMUNITY )

UNIT SCHOOL DISTRICT NO. 1, )  Honorable

)  David L. Underwood,

     Defendant-Appellee. )  Judge, presiding.

________________________________________________________________________

JUSTICE MAAG delivered the opinion of the court:

Connie Harrison (plaintiff) filed a civil action against defendants Joshua Davis, his grandfather Jimmy Davis, and Hardin County Community School District No. 1 for injuries she sustained in a motor vehicle accident.  Claims against Joshua Davis, who was driving his grandfather's car when he lost control and struck plaintiff's vehicle, and his grandfather were settled.  Plaintiff also sued Hardin County Community School District No. 1 (School District), alleging that school district personnel were willful and wanton in refusing Joshua Davis's request to leave school early due to inclement weather and deteriorating road conditions.  The School District filed a motion for summary judgment claiming that it was entitled to immunity under section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/2-201 (West 1994)).  The trial court granted summary judgment and plaintiff now appeals. 

The facts pertinent to this appeal follow.  On December 8, 1995, Joshua Davis drove his grandfather's car to school.  Joshua, who had recently celebrated his 16th birthday, was a student at Hardin County High School.  Hardin County High School is owned and operated by the School District.  On December 8, 1995, a mixture of freezing rain, sleet, and snow began falling in Hardin County.

Joshua Davis testified as follows:  During his lunch period, about 11:40 a.m., Joshua approached his principal, Ron Brumley, and asked if he could leave school early.  Joshua told Brumley that he wanted to leave before it started snowing heavily because "he didn't want to have a wreck."  Brumley told Joshua that all of the students who drove would be dismissed early, at a certain time after lunch.

After the lunch period ended, Joshua went to his next class and asked his teacher if he could use the phone to call his parents to get permission to leave early.  The teacher told Joshua to sit down and that school would be dismissed early.  Joshua testified that school was dismissed at 1 p.m. that day.  Accompanied by three other students, Joshua proceeded to drive his grandfather's car from school.  Joshua passed his home and drove toward his girlfriend's house.  En route, Joshua lost control of the vehicle, crossed the center line, and struck the front of plaintiff's vehicle.

At the time of this incident, Ron Brumley was the principal of Hardin County High School.  Brumley testified that decisions regarding early dismissal are made by the superintendent of the School District.  The principal does not make those decisions.  Brumley testified that typically, once the superintendent notified him that school should be dismissed early, he would advise the principal of the elementary school, which shared the same building.  Those students who drove to school would then be dismissed by Brumley at least 15 minutes earlier than those students who rode the bus.  These early dismissal procedures had been approved by the superintendent.

Brumley testified that during the time he was principal, there was a procedure by which parents could call the school and request that their children be dismissed early.  Brumley said that if an individual student requested to leave early due to inclement weather, the school usually required permission from the parent.  The school allowed students to call home to ask their parents if they could leave school early.  This practice was in place before Brumley became principal.  Brumley testified that he might deny a student's request to call home if school was going to be dismissed shortly.

Brumley testified that he could not recall whether or not he spoke with Joshua about leaving early on December 8, 1995.  He stated that the decision to dismiss an individual student was not a "policy decision," but an "individual call."  He said that Josh was a student who "would ask to go home at 8 o'clock in the morning if he could."  He also commented, "Anybody who has ever seen Josh drive in Hardin County would be critical of his parents for letting him drive, but I didn't give him a car and send him to school."

In plaintiff's complaint, she alleged that the accident and her injuries were "directly and proximately caused by the following willful and wanton acts on behalf of school district personnel:

a.  Refused to allow Joshua Davis to leave school when it was safe to do so given the deteriorating weather conditions on local roads;

b.  Permitted Joshua Davis to leave school property in a motor vehicle after having been advised by the student that he had difficulty driving in inclement weather conditions;

c.  Failed to call Joshua Davis' grandparents, parents, and/or adult guardian to have him picked up from school."

In its motion for summary judgment, the School District claimed that it is absolutely immune from liability under section 2-201 of the Act.  Plaintiff argued that this section provides immunity only if the act or omission by the employee is both the determination of policy and the exercise of discretion.  Plaintiff claims that this decision did not involve the determination of policy.

In determining whether the circuit court properly granted a motion for summary judgment, we exercise 
de novo
 review.  See 
White v. Village of Homewood
, 285 Ill. App. 3d 496, 673 N.E.2d 1092 (1996).  All evidence is construed favorably toward the nonmoving party and strictly against the moving party.  
White
, 285 Ill. App. 3d at 501, 673 N.E.2d at 1095.  A reversal is warranted if a material issue of fact or an inaccurate interpretation of the law exists.  See 
White
, 285 Ill. App. 3d at 501, 673 N.E.2d at 1095.

In this case, we must determine whether the trial court erred in finding that section 2-

201 of the Act provided immunity for actions of the school district personnel.  The doctrine of sovereign immunity was abolished by the Illinois Supreme Court in 1959.  See 
Molitor v. Kaneland Commuity Unit District No. 302
, 18 Ill. 2d 11, 163 N.E.2d 89 (1959).  The 1970 Illinois Constitution also abolished the doctrine of sovereign immunity, except as the General Assembly may provide by law.  Ill. Const. 1970, art. XIII, §4.  Consequently, the Act (745 ILCS 10/1-101 
et. seq.
 (West 1994)) controls whether and in what situations local governmental units are immune from civil liability.  See 
Epstein v. Chicago Board of Education
, 178 Ill. 2d 370, 687 N.E.2d 1042 (1997).

Section 2-201 of the Act states:

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2-201 (West 1994).

The Illinois Supreme Court has interpreted this provision to mean that immunity will not attach unless the plaintiff's injury results from an act or omission by the employee in determining policy and in exercising discretion.  The act or omission must be both a determination of policy and an exercise of discretion.  See 
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 692 N.E. 2d 1177 (1998).

While section 2-201 of the Act provides discretionary immunity for acts undertaken in the determination of policy, it does not furnish a statutory definition for the terms "discretion" or "policy."  In the absence of statutory definitions, our courts have continued to employ common law definitions.  See 
Snyder v. Curran Township
, 167 Ill. 2d 466, 473, 657 N.E.2d 988, 992 (1995).

Under common law, discretionary acts are those of a public, legislative, or quasi-

judicial character that are unique to a particular public office.  Ministerial acts are those that a person performs on a given state of facts, in a prescribed manner, in obedience to the legal authority, and without reference to the official's discretion as to the propriety of the act. See 
Snyder
, 167 Ill. 2d at 474, 657 N.E.2d at 993.  For example, a municipal unit acts judicially, or exercises discretion, when it selects and adopts a plan in the making of public improvements, but as soon as it begins to carry out that plan, it acts ministerially and is bound to see that the work is carried out in a reasonably safe and skillful manner.  See 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 194, 680 N.E.2d 265, 272 (1997).

In sharp contrast to the vast number of appellate decisions defining or describing "discretionary acts," there are few that offer a basic definition of "policy" or "determination of policy."  Black's Law Dictionary defines policy as the set of "general principles by which a government is guided in its management of public affairs."  Black's Law Dictionary 1178 (7th ed. 1999).  The Illinois Supreme Court described policy decisions made by a municipality as "those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests."  
West v. Kirkham
, 147 Ill. 2d 1, 11, 588 N.E.2d 1104, 1109 (1992); 
Harinek
, 181 Ill. 2d 335, 692 N.E.2d 1177.  Stated another way, a "policy determination" requires considered evaluation and judgment by a governmental unit, utilizing its own particular expertise, to formulate principles and procedures directed toward the achievement of common and general goals for the community's benefit.  During the evaluation process, several factors, including the public benefit, the practicability of the plan or procedure, and the best methods to be employed considering available resources, costs, and safety, must be considered.  See 
Mora v. State
, 68 Ill. 2d 223, 233, 369 N.E.2d 868, 873 (1977).

We have no difficulty accepting that the superintendent's decision to call for early dismissal on December 8, 1995, constituted an exercise of discretion in the determination of school policy.  In this case, an early dismissal policy for inclement weather had been established by the School District.  Procedures to implement the policy had also been established.  The policy and procedures were established to provide for the safety of students, faculty, staff, and surrounding community.  Deciding whether the conditions on a given day fall within the definition of inclement weather and at what time and in what manner the student body would be released are discretionary decisions based upon the inclement weather policy.  But these are not the decisions about which plaintiff complains.

Plaintiff has alleged willful and wanton conduct based upon the refusal of school personnel to permit one student, Joshua Davis, to leave early or to contact his parents for permission to leave early.  Based upon their briefs, the parties agree that the decision not to dismiss Joshua involved an exercise of discretion.  They disagree as to whether the decision to deny Joshua's request to leave before the other students was also a policy determination.

In our view, the decision to refuse Joshua's request for an earlier dismissal was not an exercise of discretion in the determination of policy.  The decision by school personnel related only to whether they would create an exception to the existing procedure for one student.  This was not a decision at the "planning level."  It did not involve the formulation of principles to achieve a common public benefit.  Presumably, before ordering early dismissal, the School District considers a number of factors, such as current weather conditions and the forecast conditions for the immediate future, the current road conditions and the likelihood of  deterioration, and the community resources to clear the roads, the local traffic patterns at various hours of the day, the distance each student or bus must travel, and whether there would be parental supervision available once the student is transported home.  The decision regarding whether to dismiss early and at what time involves a considered evaluation of the safety of the entire student body and the community.  Any suggestion that the decision to refuse Joshua's request involved a considered evaluation and judgment as to risks that his early dismissal posed to the school, the community, and other commuters in the Hardin community is unsupported by the testimony and is, in our judgment, ludicrous.

In this case, the superintendent made the decisions as to whether school would be dismissed early and what time it would be dismissed.  The principal and the faculty executed the early dismissal policy and procedures once they received the directive from the superintendent as to time and manner.  Here, school personnel had to determine whether to permit one student to leave early.  This was an individual judgment call.  While there may have been some discretion exercised by school personnel in determining whether Joshua Davis should be permitted to depart early or to call his parents, we do not think those decisions were made in the course of determining policy.  This decision involved discretion in carrying out an established procedure.  See 
Courson v. Danville School District No. 118
, 301 Ill. App. 3d 752, 757, 704 N.E.2d 447, 450 (1998); 
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 680 N.E.2d 265.  Not every discretionary act is also a determination of policy and thus immunized by section 2-201.  See 
Courson
, 301 Ill. App. 3d at 757, 704 N.E.2d at 451.

We find that the trial court erred in finding that section 2-201 of the Act provided immunity for actions of school district personnel and in
 
granting summary judgment based upon that finding.  

Accordingly, the judgment of the circuit court granting summary judgment in favor of the defendant is reversed, and the cause is remanded.

Reversed; cause remanded.

CHAPMAN, J., concurs.

JUSTICE WELCH, dissenting:

Is a school principal determining policy when making a decision with respect to an individual student on a single occasion?  I think so; the majority thinks otherwise.

The only question we are called upon to answer, today, is whether Principal Brumley was determining policy when denying Joshua's request to be dismissed early.  The elements of discretion and public employment are conceded by the parties in our determination of tort immunity.  See 
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 341 (1998) (interpreting section 2-201 (745 ILCS 10/2-201 (West 1994)), regarding determination of policy and exercise of discretion under the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act)). 

In 
West v. Kirkham
, 147 Ill. 2d 1, 11 (1992), our supreme court addressed governmental policy decisions in the context of municipal tort immunity for failure to provide traffic signs and signals under section 3-104 of the Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 3-104 (now 745 ILCS 10/3-104 (West 1998))).  The court reasoned that policy decisions require the balancing of a host of competing interests and the making of a judgment as to what solution will best serve each of those interests.  
Kirkham
, 147 Ill. 2d at 11.  Thus, 
Kirkham
 instructs us to consider each interest, to balance the multiple interests, and then to arrive at a conclusion.

In 
Harinek
, the court applied 
Kirkham
's reasoning regarding policy decisions to section 2-201 of the Immunity Act (745 ILCS 10/2-201 (West 1994)).  
Harinek
, 181 Ill. 2d at 342.  In 
Harinek
, an office worker was struck by a door and injured during a fire drill after a fire marshal told her to stand near the door.  The court held that the fire marshal was "determining fire department policy" in planning, controlling, operating, and implementing the fire drill.  
Harinek
, 181 Ill. 2d at 342.  The court reasoned that the fire marshal was responsible for planning and conducting fire drills, and in doing so the marshal balanced competing interests, including the interests of efficiency and safety, which competed for the time and resources of the department.  The marshal's decisions regarding the placement of the fire drill participants served to balance those interests, and the marshal's "acts and omissions were undertaken in determining policy within the meaning of the statute."  
Harinek
, 181 Ill. 2d at 342-43.

In 
Johnson v. Decatur Park District
, 301 Ill. App. 3d 798, 809 (1998), a student in a power tumbler's group was injured in a fall and alleged that the park district, which had hired his coach, had willfully and wantonly failed to warn of the danger and failed to provide certain safety equipment and measures.  The Fourth District Appellate Court affirmed the circuit court's grant of summary judgment in favor of the park district pursuant to section 2-

201 of the Immunity Act.  It reasoned that the park district, via its coach, determined what tumbling maneuvers would be performed, whether a tumbler was capable of performing the maneuver, and what equipment and safety precautions were needed.  Thus, the coach considered the abilities of each tumbler, balanced those interests against the resources of the park district, and made a policy decision as to how to best perform his coaching duties.

In this case, the school had an existing policy regarding individual student requests for early dismissal.  Generally, such requests were denied.  Exceptions were permitted when the individual student's parents called the school to request early dismissal or when the individual student called a parent to seek parental permission to leave school early.  Brumley testified that a student's request to call home under the second exception might be denied if the entire school was to be dismissed early.

In determining that policy with respect to Joshua, Brumley was called upon to consider Joshua's circumstance, to balance competing interests in deciding whether to dismiss Joshua early, and to come to a conclusion.  We do not know Brumley's thoughts, but he was called upon to consider, among other things, Joshua's safety, the weather conditions at the time, the expected future weather conditions, Joshua's lack of driving experience, Joshua's questionable driving abilities, Joshua's prior requests to leave early, and the lack of a telephone call from Joshua's parents or from his grandfather.  Brumley was to then balance Joshua's early dismissal against the entire school's early dismissal.  Thus, Brumley was not only exercising discretion, but he was determining policy and making a policy decision when he told Joshua that he would have to wait for the entire school to be dismissed early.  Therefore, I believe that the circuit court acted properly in granting summary judgment in favor of the defendant.