PHYLLIS CAPPS, Plaintiff-Appellee, v. BELLEVILLE SCHOOL DISTRICT No. 201, Defendant-Appellant.

Fifth District   No. 5—99—0228

Opinion filed May 10, 2000.

WELCH, J., dissenting in part and concurring in part.

John J. Kurowski and Timothy J. O'Leary, both of Kurowski Law Firm, P.C., of Swansea, for appellant.

Harriet Homsher Hamilton and Joseph A. Bartholomew, both of Cook, Shevlin, Ysursa, Brauer & Bartholomew, Ltd., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

On June 2, 1995, Phyllis Capps (plaintiff) attended a graduation ceremony at a school gymnasium in Belleville School District No. 201 (the School District). As she left the gymnasium after the ceremony, plaintiff fell off the side of an accessibility ramp and was injured. Plaintiff filed a two-count complaint for damages for her injuries. The first count sounds in negligence, and the second alleges willful and wanton conduct. Both counts allege that the School District failed to

place a railing on the ramp, failed to warn of a drop-off, failed to light the area, and failed to supervise patrons as they left the graduation ceremony. The School District denies liability and also claims that it is immune from liability based on the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 *et seq.* (West 1998)). The trial court denied the School District's motion for summary judgment but found that there are issues of law presented upon which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The School District appeals under Supreme Court Rule 308 (155 Ill. 2d R. 308). We affirm in part, reverse in part, and remand.

The trial court identified the following four issues of law for our review:

1. Whether an accessibility ramp leading into a school recreational facility is an integral part of said facility, thereby affording the School District the immunity of section 3—106 of the Tort Immunity Act (745 ILCS 10/3—106 (West 1998)).

2. Whether the School District's conduct did rise to the level of willful and wanton as a matter of law.

3. Whether the School District is afforded the immunity of section 2—201 of the Tort Immunity Act (745 ILCS 10/2—201 (West 1998)) where, according to the allegations of the complaint, plaintiff stepped off the side of an accessibility ramp while exiting a school gymnasium.

4. Whether the School District is afforded the immunity of section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1996)) where, according to the allegations of the complaint, plaintiff allegedly stepped off the side of an accessibility ramp while exiting a school gymnasium.

The review of summary judgment rulings is *de novo.* See *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 7, 688 N.E.2d 106, 108 (1997). A motion for summary judgment can only succeed if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See 735 ILCS 5/2—1005(c) (West 1998); *Gatlin v. Ruder*, 137 Ill. 2d 284, 293, 560 N.E.2d 586, 589 (1990).

According to the record, the accessibility ramp was designed under the supervision of Robert Ganschinietz, who was then with WHGK Architects, Inc. Currently, Ganschinietz is the director of health, life, and safety for St. Clair County. Before its construction, the ramp was also approved by the School District's business manager, Eugene Sawalich. The ramp was constructed in 1980, apparently in accordance with the design approved by both Ganschinietz and Sawalich.

The ramp attaches to a series of gymnasium doors. There are four sets of doors, each with two doors divided by an immovable glass partition. The ramp is located on the left set of doors as they are viewed from the outside. The ramp is 9 feet wide and 5 feet 6 inches long and rises approximately 4½ inches from the sidewalk to a 5-foot-deep and 9-foot-wide landing area that is flush with the interior of the gymnasium. The other three sets of doors share a stairway that rises approximately 4½ inches from the sidewalk to the top of the stairs.

The gymnasium is used for a variety of noncompulsory, school-sponsored, extracurricular sports including, but not limited to, basketball, volleyball, baseball, track, wrestling, and football. The gymnasium is also used for nonsporting, noncompulsory events, such as choral and band concerts, assemblies, holiday programs, and graduation ceremonies.

■ We turn to the issue of whether the School District is immune from liability pursuant to section 3—106 of the Tort Immunity Act (745 ILCS 10/3—106 (West 1998)), which provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings[,] or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3—106 (West 1998).

A 1986 amendment expanded the scope of this section from parks, playgrounds, and open areas to include enclosed facilities and virtually all public property used for recreational purposes. Pub. Act 84—1431, art. I, § 2, eff. November 25, 1986.

■ The issue before us is whether the accessibility ramp is public property *intended or permitted to be used for recreational purposes* within the meaning of this statute. Section 3—106 is to be applied on a case-by-case basis by evaluating the subject property's character. See *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 384, 657 N.E.2d 887, 893-94 (1995).

In *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 689 N.E.2d 1119 (1997), a woman was walking through a Chicago Park District parking lot on her way to Soldier Field and a Bears game. She tripped over an improperly placed concrete car stop. The supreme court held that the district was immune for any negligence, on the ground that the parking lot increased the usefulness of, and was an integral part of, the Soldier Field recreational facility.

The "increased usefulness" factor is properly considered only af-

ter a determination that the nonrecreational structure is *within* the recreational public property covered by section 3—106. See *Batson v. Pinckneyville Elementary School District No. 50*, 294 Ill. App. 3d 832, 836, 690 N.E.2d 1077, 1080 (1998). In this case, the ramp is located outside the recreational public property covered by section 3—106. The plain language of section 3—106 contemplates a determination of immunity for *bounded* public property. See *Batson*, 294 Ill. App. 3d at 837, 690 N.E.2d at 1080. Therefore, the ramp is not recreational public property, and the School District is not afforded section 3—106 immunity under these circumstances.

■ We now turn to the second issue, whether the School District's conduct was willful and wanton. Willful and wanton conduct means a course of action that shows an actual or deliberate intention to cause harm or that, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. See 745 ILCS 10/1—210 (West 1998).

In this case, the ramp was designed under the supervision of Robert Ganschinietz, who was then with WHGK Architects, Inc. At the time it was designed, the ramp met all applicable standards, and its design was approved by Ganschinietz. No one has reported an injury associated with the accessibility ramp from the date of its construction to June 2, 1995. Furthermore, no one, with the exception of plaintiff in this case, has ever reported that the ramp or lighting appeared unsafe. Under these circumstances, the School District's conduct cannot be said to be willful and wanton. Thus, on the issue of whether the School District's conduct rose to the level of willful and wanton, we conclude that the trial court erred in not granting summary judgment on behalf of the School District.

We now turn to the remaining issues on appeal.

■ In its motion for summary judgment, the School District claimed absolute immunity from liability under section 2—201 of the Tort Immunity Act (745 ILCS 10/2—201 (West 1998)). Section 2—201 of the Tort Immunity Act states:

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1998).

The Tort Immunity Act further provides that a local public entity is not liable for an act or omission of its employee if the employee is not liable. 745 ILCS 10/2—109 (West 1998).

The Illinois Supreme Court has interpreted section 2—201 to mean

that immunity will not attach unless the plaintiff's injury results from an act or omission by the employee involving both the determination of policy and the exercise of discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 692 N.E.2d 1177 (1998).

■ Policy decisions are those decisions that require the municipality to balance competing interests and to make a judgment call as to which solution will best serve each of those interests. See *West v. Kirkham*, 147 Ill. 2d 1, 11, 588 N.E.2d 1104, 1109 (1992).

In *Harrison v. Hardin County Community Unit School District No. 1*, 313 Ill. App. 3d 702 (2000), Connie Harrison sued the defendant school district for injuries she sustained when Joshua Davis's automobile struck her automobile. Harrison claimed that school personnel were responsible because they refused the request of Davis, an inexperienced driver, to leave school early due to inclement weather and deteriorating road conditions.

In *Harrison*, the school superintendent made the policy decision as to whether school would be dismissed early. The appellate court held that, although the superintendent's decision was one of policy, the principal's decision whether to allow Joshua Davis to leave early was an individual discretionary determination. The court held that that decision, although discretionary, was not made in the course of determining policy. Since the supreme court in *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 692 N.E.2d 1177 (1998), has held that section 2—201 immunity will not attach unless the injury results from an act that involves both the determination of policy and the exercise of discretion, the school district was not entitled to section 2—201 immunity.

■ In the case at bar, we agree with the School District that the initial decision to construct the ramp was a determination of policy, namely, the School District's broad policy determination to make the school campus more accessible for the disabled. The allegations of misconduct about which plaintiff complains, however, do not stem from the initial policy decision to construct the ramp.

The decision regarding whether to make the campus more accessible, and in what manner, involved a considered evaluation of the benefits such a plan would provide to the students and to the community. The School District's determinations whether to put a railing on the ramp, install lighting, warn of a drop-off, or supervise patrons are discretionary decisions. Like the principal's decision whether or not to dismiss Joshua early, the decisions in the case at bar were not exercises of discretion in the determination or implementation of policy. These decisions were the result of individual discretionary determinations as to whether or not certain maintenance procedures

should be taken. We conclude, therefore, that section 2—201 does not provide immunity in this case.

■ Section 2—201 aside, the School District also argues that it is immune under section 3—108(a) of the Tort Immunity Act (745 ILCS 10/3—108(a) (West 1996)). That section, which has been amended since the accident, provided:

"Except as otherwise provided by this Act and subject to subdivision (b)[,] neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1996).

■ Plaintiff alleges that the School District was negligent by failing to place a railing on the ramp, failing to warn of a drop-off, failing to adequately light the ramp, and failing to supervise the exiting of graduation attendees. The School District argues that all of the allegations in plaintiff's complaint relate directly to its failure to supervise and that the School District is thus entitled to immunity pursuant to section 3—108(a). Plaintiff concedes summary judgment in favor of the School District as to her allegation that the School District failed to supervise the exiting of patrons from the graduation ceremony. Plaintiff argues, however, that the other three allegations of negligence are not subject to the School District's immunity defense under section 3—108(a).

Section 3—106 of the Tort Immunity Act deals with the condition of a particular type of property—recreational property. 745 ILCS 10/3—106 (West 1998). Section 3—108(a) concerns a specific type of conduct and has nothing to do with the condition of the property. 745 ILCS 10/3—108(a) (West 1996). The School District's claim under section 3—108(a) is misplaced, except for subparagraph 5(d) of count I of plaintiff's complaint, which concerns the failure to supervise the exiting patrons.

Cases under section 3—108(a) typically deal with adult leaders overseeing after-school programs (see *Longfellow v. Corey*, 286 Ill. App. 3d 366, 675 N.E.2d 1386 (1997)), lifeguards supervising swimming pools (see *Barnett v. Zion Park District*, 171 Ill. 2d 378, 665 N.E.2d 808 (1996)), and teachers supervising physical education classes (see *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 712 N.E.2d 298 (1998)). Accordingly, with the exception of the School District's alleged failure to supervise the exiting patrons, we find that the trial court properly denied the School District's motion for summary judgment as to section 3—108(a).

Therefore, our answers to the certified questions are in the negative. In summary, the result of our answers is that the trial court erred in denying the School District's motion for summary judgment

as to count II, because the School District's conduct cannot be said to be willful and wanton. We also hold that the School District is entitled to the immunity of section 3—108(a), as regards plaintiff's allegation in paragraph 5(d) of count I that the School District failed to supervise the exiting of patrons from the graduation ceremony. We affirm the trial court's decision in all other respects.

Affirmed in part and reversed in part; cause remanded.

RARICK, J., concurs.

JUSTICE WELCH, dissenting in part and concurring in part:
In my opinion the School District is immune from liability pursuant to sections 3—106 and 2—201 of the Tort Immunity Act (745 ILCS 10/3—106, 2—201 (West 1998)).

In regard to section 3—106, I believe the accessibility ramp increased the usefulness of, and was an integral part of, the school gymnasium. In *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 508-09 (1997), our supreme court set forth the "increased usefulness" test under section 3—106 for adjoining nonrecreational structures to recreational public property. In that case, the court held that section 3—106 immunity applied to a walkway adjacent to a Soldier Field parking lot, because it increased the usefulness of, and was an integral part of, the Soldier Field recreational facility. Thus, *Sylvester* directs me to conclude that immunity should apply going in and going out.

In the instant appeal, the accessibility ramp led to the gymnasium and provided the primary, if not the sole, means of ingress and egress to the gymnasium for those with mobility impairments. In other words, the ramp welcomed all gymnasium users. Thus, it was an integral part of—and much more than merely incidental to—the recreational character of the property as a whole. See *Sylvester*, 179 Ill. 2d at 509, citing *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 379-81 (1995). Thus, section 3—106 immunity should apply. See 745 ILCS 10/3—106 (West 1998).

Under section 2—201, immunity is not possessed unless the plaintiff's injury resulted from an act or omission by a public employee, in a position involving the determination of policy or the exercise of discretion, who was exercising discretion and determining policy. See *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 342 (1998) (interpreting section 2—201). In 1980, when the ramp was constructed, the architect and the business manager for the School District exercised discretion when deciding how to design the ramp and determined policy in deciding to build the ramp to increase

access for the disabled. Thus, section 2—201 immunity should apply because plaintiff's injury complained of here resulted from alleged deficiencies—namely, the lack of a railing—in the design and in the building of the ramp.

Therefore, I believe that certified question one (whether an accessibility ramp leading into a school recreational facility is an integral part of said facility thereby affording the School District the immunity of section 3—106) and question three (whether the School District is afforded the immunity of section 2—201 where plaintiff allegedly stepped off the side of an accessibility ramp while exiting a school gymnasium) should be answered with a resounding "Yes."

I concur with the majority, answering "No," in response to question two (whether the School District's conduct rose to the level of willful and wanton as a matter of law). I also concur with the majority in regard to question four (whether the School District is afforded the immunity of section 3—108(a) (745 ILCS 10/3—108(a) (West 1996)) for failure to supervise). However, I would conclude that the School District is immune for failure to place a rail, for failure to warn, and for failure to illuminate under section 3—106 or under section 2—201 of the Tort Immunity Act.