BRETT LONGFELLOW, a Minor, by his Mother and Next Friend, Holly Longfellow, *et al.*, Plaintiffs-Appellants, v. J.D. COREY *et al.*, Defendants-Appellees.

Fourth District    No. 4—96—0460

Argued December 17, 1996.—Opinion filed February 4, 1997.

Marvin Gerstein (argued), of Urbana, for appellants.

Bianca I. Truitt (argued), and Bruce E. Warren, both of Thomas, Mamer & Haughey, of Champaign, for appellees.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In November 1994, plaintiff, Holly Longfellow, individually and as the mother and next friend of Brett Longfellow, a minor, sued defendants, Urbana School District No. 116 (School District), Terry Napper, and J.D. Corey, in an action for personal injuries. In May 1996, the trial court determined that defendants were immune from liability pursuant to section 3—108(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/3—108(a) (West 1992)) and dismissed plaintiffs' second-amended complaint with prejudice. Plaintiffs appeal from that dismissal, and we reverse and remand.

## I. BACKGROUND

In February 1996, plaintiffs filed a second-amended complaint alleging that on December 1, 1993, Brett (then eight years old) was a student in an after-school child care program at Wiley Elementary School in Urbana, Illinois. Defendant School District operated the after-school program. The School District employed defendant Napper as the site coordinator and defendant Corey as a recreational leader for the program. The second-amended complaint alleged that on December 1, 1993, Corey "directed [Brett] to participate in a game of tag requiring [Brett] to have a piece of cloth in his pant's back pocket and to be pursued by [Corey], for the intended purpose of

avoiding [Corey] from removing the piece of cloth from [Brett's] pant's back pocket." At Corey's direction, Brett ran backward across the gymnasium floor while Corey ran toward him. The complaint further alleged that (1) Corey was "significantly" taller and faster than Brett; (2) Corey had a "longer foot span and longer gait"; (3) Corey was "running full speed facing straight at" Brett as Brett ran backward, mirroring Corey's movements; (4) Corey was able to change direction more quickly than Brett; and (5) Brett was pushed beyond his normal capabilities by Corey's actions. The complaint further alleged that "as a direct and proximate result" of Corey's conduct as an active participant in the game, Brett tripped while running backward and fell, suffering injuries to his mouth and teeth.

Defendants moved to dismiss the second-amended complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)). They claimed that "all counts of the [p]laintiff's [*sic*] second[-]amended complaint are based upon allegations that the [d]efendants failed to properly supervise the activities" of Brett, and therefore, section 3—108(a) of the Act immunized them from liability from any claim of negligence or wilful or wanton conduct based on supervision of an activity.

In May 1996, after considering the parties' motions and arguments, the trial court granted defendants' motion and dismissed the second-amended complaint with prejudice. The court specifically found that "there is no qualitative difference between the 'participatory' activity argued by [p]laintiff[s] to be present here and the activities involved in supervising encompassed by [section 3—108(a) of the Act]."

## II. SECTION 3—108(a) IMMUNITY

Plaintiffs argue that section 3—108(a) of the Act does not provide immunity in this case where "[t]he cause of action in question rests squarely on the active participation by an adult in a children's game, not on a failure to adequately supervise a children's game." Plaintiffs contend that section 3—108(a) of the Act is specifically limited to situations in which a failure to "oversee" an activity results in injury and does not extend to situations in which "participatory" conduct proximately causes the injury. In response, defendants argue that even though the second-amended complaint did not specifically allege a "failure to supervise," the facts alleged therein constitute nothing more than supervision.

■ The purpose of a section 2—619 motion to dismiss is to provide a means to dispose of issues of law or easily proved issues of fact. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112,

115, 619 N.E.2d 732, 735 (1993). In the present case, the ground advanced for dismissing the complaint is that the claims asserted therein are barred by a defense that completely negates the asserted causes of action. *Payne v. Lake Forest Community High School District 115*, 268 Ill. App. 3d 783, 784-85, 644 N.E.2d 835, 836 (1994); see 735 ILCS 5/2—619(a)(9) (West 1992). The trial court should grant the motion and dismiss the complaint if, after construing the allegations in the light most favorable to the plaintiff, no set of facts can be proved that would entitle the plaintiff to recover. *Payne*, 268 Ill. App. 3d at 785, 644 N.E.2d at 836. When reviewing the propriety of the trial court's decision to grant a section 2—619 motion, the reviewing court must accept as true all well-pleaded facts alleged in the complaint. *Payne*, 268 Ill. App. 3d at 785, 644 N.E.2d at 836. We review the trial court's ruling on the defendants' section 2—619 motion *de novo*. *Payne*, 268 Ill. App. 3d at 785, 644 N.E.2d at 836.

■ In the present case, defendants relied upon the immunity provided by section 3—108(a) of the Act, which reads as follows:

"(a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." 745 ILCS 10/3—108(a) (West 1992).

The supreme court recently discussed section 3—108 of the Act in *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388-89, 665 N.E.2d 808, 813 (1996), as follows:

"In interpreting section 3—108, our primary goal is to ascertain and give effect to the intention of the legislature. We seek the legislative intent primarily from the language used in the Tort Immunity Act. We evaluate the Act as a whole; we construe each provision in connection with every other section. [Citation.] If we can ascertain the legislative intent from the plain language of the Act itself, that intent must prevail, and we will give it effect without resorting to other interpretive aids. [Citation.] We must not depart from the plain language of the Act by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent."

■ The Act itself does not define the term "supervise" or the phrase "failure to supervise." Webster's Third New International Dictionary defines "supervise" as follows:

"[T]o *coordinate, direct,* and inspect continuously and *at first hand* the accomplishment of: oversee with the powers of direction and decision the implementation of one's own or another's intentions." (Emphasis added.) Webster's Third New International Dictionary 2296 (1986).

The Oxford English Dictionary defines "supervision" as "[g]eneral management, direction, or control; oversight, superintendence." Oxford English Dictionary 245 (2d ed. 1989). Further, the Oxford English Dictionary defines "direct" in the following manner: "[k]eep in right order; to regulate, control, govern the actions of *** [t]o cause (a thing or person) to move *** towards a place." (Emphasis added.) Oxford English Dictionary 701 (2d ed. 1989). One author has defined "supervision" (in the context of school tort liability) as "the general conduct of the teacher or other school personnel, and thus it includes negligent acts inflicting or resulting in injury." Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Injuries Resulting from Lack or Insufficiency of Supervision*, 38 A.L.R.3d 830, 833 (1971). Further, in its ordinary usage, supervision often involves some active participation (such as when physical education instructors, teachers aides, or recreational leaders provide hands-on instruction to students or referee games devised for students).

■ Giving the statutory language its plain and ordinary meaning, we conclude that supervision extends beyond passive oversight of an activity and includes direction, teaching, demonstration of techniques, and—*to some degree*—active participation in an activity while supervising it. Because supervision often involves some level of active participation, it would be illogical to provide immunity to a public employee for passively overseeing an activity, yet withhold immunity the moment such an employee undertakes *any* active role in an activity that employee is supervising. However, supervision does *not* encompass active participation that rises to the level—as here—of intense one-on-one competition in the form of a game or activity that has a winner and a loser. Under such circumstances, the public employee clearly has abandoned the role of supervisor and become an equal competitor with the participant.

For example, within the scope of supervision, a wrestling coach may physically demonstrate a particular technique or hold on a wrestler. However, if that wrestling coach participates in a one-on-one competition with a student wrestler, the coach abandons his role as supervisor and becomes an equal competitor with his student wrestler. Within the supervisory role, a basketball coach or instructor may teach her players or students how to run a fast break by actively participating in the fast break drills. But if that basketball coach or instructor participates in a competitive one-on-one game with one of her players or students, she abandons the supervisory role. Further, within the scope of supervision, a football coach may hold a blocking sled for players or demonstrate blocking techniques.

However, if that football coach engages in a head-to-head blocking or tackling competition with a player, he abandons the role of supervisor.

Such an interpretation finds support in appellate court decisions concluding that section 3—108(a) of the Act provides immunity not only for *complete* "failure to supervise," but also for inadequate or improper supervision, including negligent or willful or wanton conduct once supervision is undertaken. In *Koh v. Village Greens*, 158 Ill. App. 3d 226, 227, 511 N.E.2d 854, 855 (1987), the plaintiff sought recovery for injuries sustained when she was struck by a golf ball while on a public golf course owned and operated by a village. The plaintiff alleged, in part, that she was injured as a result of the defendant's conduct in managing the crowd at the first tee where defendant directed participants and spectators to stand on the golf course where errant golf balls could reasonably strike those individuals. *Koh*, 158 Ill. App. 3d at 228, 511 N.E.2d at 855. The trial court granted the defendant's motion to dismiss one count of the plaintiff's complaint, finding that section 3—108(a) of the Act immunized the village from liability. *Koh*, 158 Ill. App. 3d at 228, 511 N.E.2d at 855. On appeal, the plaintiff conceded that a public entity and its employees have immunity from liability for a failure to undertake supervision of activities on public property, but argued that such immunity does not extend to negligent conduct once supervision is undertaken. *Koh*, 158 Ill. App. 3d at 228-29, 511 N.E.2d at 855. The Second District Appellate Court rejected the plaintiff's argument, concluding that "the alleged negligent *conduct* of the defendant village *in supervising* and regulating the use of its public golf course is immune from the liability" pursuant to section 3—108(a) of the Act. (Emphasis added.) *Koh*, 158 Ill. App. 3d at 229, 511 N.E.2d at 856; see also *Ramos v. City of Countryside*, 137 Ill. App. 3d 1028, 1032, 485 N.E.2d 418, 421 (1985) (where the court held that section 3—108(a) of the Act was applicable "to shield the city *** from liability for an asserted failure to adequately supervise a summer recreation program held on public property"); *Payne*, 268 Ill. App. 3d at 784, 644 N.E.2d at 836.

In the present case, Corey (the adult recreational leader) directed eight-year-old Brett to participate in a game of tag in which Corey ran full tilt toward Brett as Brett ran backward attempting to avoid him. Corey and Brett were engaged in an intense one-on-one competition in an activity that has a winner and a loser. Under these circumstances, Corey abandoned his role as supervisor of the activity and became an equal competitor with Brett. Accordingly, we hold that the trial court erred by determining that defendants were immune from liability pursuant to section 3—108(a) of the Act and dismissing plaintiffs' second-amended complaint with prejudice.

## III. CONCLUSION

For the reasons stated, we reverse and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

GARMAN and KNECHT, JJ., concur.