FOURTH DIVISION

March 31, 1999

No. 1-98-3216

VERONICA ANN DIXON, as Special )  APPEAL FROM THE

Administrator of the Estate of )  CIRCUIT COURT OF

TIFFANY DIXON, Deceased, )  COOK COUNTY.

)

Plaintiff-Appellant, )   

)  96 L 11022

v. )   

) 

CHICAGO BOARD OF EDUCATION, )  HONORABLE  

)  SOPHIA H. HALL,

Defendant-Appellee. )  JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

On September 21, 1995, during Englewood High School swimming team tryouts, 16 year-old Tiffany Dixon drowned.  This case represents a clash of interests--the right to sue a public entity for the death of a child due to its alleged failure to supervise against the legislature's determination to protect that entity from large damage awards.  

Veronica Ann Dixon (Dixon) appeals the trial court's order granting summary judgment to the Chicago Board of Education (the Board).  We affirm.

FACTS

     
Englewood High School's swimming team coach Robert Blake (Blake) testified in his deposition:

Englewood High School's volunteer lifeguard, Randy White, asked Blake for permission to leave the pool area for a short time during swimming team tryouts.  Blake responded, "*** okay, I got it, I got it."  Blake described supervising the pool:

"You're aware of the students in your swimming pool, you know who you have in your lanes or you know about how many kids you have in your lane, and you assign them little partners, watch over each other.  You try to put out as many safety procedures as you possibly can.  But when you actually start to look at one particular student, that's where you're at, you're focusing there."

When Tiffany entered the pool, Blake was 15-20 yards from her, standing on the pool deck.  Blake watched Tiffany as she swam 20 yards from the shallow side of the pool into the deep side.  Blake said, "*** [S]he was swimming pretty good and I was very happy about that."  As Tiffany approached the end of the pool after swimming nearly 25 yards, Blake observed, "*** she was moving pretty fine.  I didn't see any problems at all, nothing with her breathing.  I didn't see anything.  Moving pretty strong."

Then, Blake turned his attention to another swimmer:

"At that point in time I had other swimmers in the pool.  I believe I was watching Mike Washington, *** checking his mechanics as well and see if he was working on his techniques well.  So I just scanned him down for a second knowing in my mind at the rate of speed [Tiffany] was moving, that she should reach the end of the pool in time for me to watch Mike and then scan back around and she should have been turning around, coming back at the rate of speed that she was traveling.

* * *

I went back to check on Tiffany, and I expected her to be at the wall or coming away from the wall, but she wasn't there.  I'm looking, where is she at, and that's when I observed that she was at the bottom of the pool."

Blake estimated Tiffany was at the bottom of the pool for "[s]econds" as he watched Mike Washington:

"It had to be under ten seconds or more or less, it had to be right up in there.  It wasn't any longer than that because I knew she was still in the water swimming.  So as I checked for Mike going down [the length of the pool], scanned, okay, he's fine, I come back, then there she is.  It was just like this.  It was so quick."

The record also contains three pages of a deposition by Dequita Wade (Wade), another swimmer in the pool at the time of Tiffany's accident.  Wade testified she and Tiffany were swimming together.  When Wade finished her third lap, she did not see Tiffany swimming and assumed Tiffany had exited the pool.  Wade got out of the pool and went into the locker room.  Wade came back, "about three or four minutes" later, and noticed Tiffany at the bottom of the pool.

Dixon filed a two-count complaint against the Board, alleging, 
inter alia, 
the Board through its employees "*** [f]ailed to keep a lookout for swimmers in distress ***."  Dixon's amended complaint expanded on this allegation, charging the Board:

"*** [f]ailed to adequately keep a lookout for swimmers in distress, particularly [Tiffany], in that a lifeguard was posted at the pool, but left his post at and immediately prior to [Tiffany's] descending to the bottom of the pool ***."

The plaintiff agrees her cause of action is based only on the Board's failure to supervise Tiffany's swimming activity.

The Board filed a summary judgment motion, asserting it enjoyed immunity, as a local public entity, from Dixon's allegations under section 3-108 of the Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/3-108
 
(West 1994).  The trial court agreed and granted summary judgment to the Board.  This appeal followed.

DECISION

Summary judgment is appropriate if the record shows "*** that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 1994).  Summary judgment "*** is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt."  
Loyola Academy v. S&S Roof Maintenance, Inc., 
146 Ill. 2d 263, 271, 586 N.E.2d 1211 (1992)(citing 
Purtill v. Hess, 
111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986)).  The trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the non-moving party.  
Loyola Academy, 
146 Ill. 2d at 271.

We review 
de novo 
the trial court's decision to grant summary judgment.  
Myers v. Health Specialists, S.C., 
225 Ill. App. 3d 68, 72, 587 N.E.2d 494 (1992).  Interpretation of the Tort Immunity Act is a question of law appropriate for summary judgment.  
Barnett v. Zion Park District, 
171 Ill. 2d 378, 385, 665 N.E.2d 808 (1995).

Section 3-108 of the Tort Immunity Act provides:

"(a) Except as otherwise provided by this Act and subject to subdivision (b) neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property.

(b) Where a local public entity or public employee designates a part of public property to be used for purposes of swimming and establishes and designates by notice posted upon the premises the hours for such use, the entity or public employee is liable only for an injury proximately caused by its failure to provide supervision during the said hours posted."  745 ILCS 10/3-108 (West 1994).

Section 3-108(a) "*** bars plaintiffs' claims against local government units for their failure to supervise the activities of others."  
Epstein v. Chicago Board of Education, 
178 Ill. 2d 370, 379, 687 N.E.2d 1042 (1997).  The term "supervision" includes coordination, direction, oversight, implementation, management, superintendence, and regulation.  
Longfellow v. Corey, 
286 Ill. App. 3d 366, 369-70, 675 N.E.2d 1386 (1997).  Because it does not contain an exception for wilful and wanton misconduct, section 3-

108(a) offers absolute immunity.  
Henrich v. Libertyville High School, 
No. 84094, slip op. at 5 (December 3, 1998); 
Barnett, 
171 Ill. 2d at 391-92.
(footnote: 1)
The absolute immunity provided by section 3-108(a) is expressly subject to the exception contained in section 3-108(b).  Section 3-108(b) applies only when a local public entity designates a part of public property for use as a swimming area, "*** and designates by notice posted upon the premises the hours for such use ***."  745 ILCS 10/3-108(b).

The notice requirement alerts swimmers the local public entity will provide supervision only during the specified hours.  The statute is unclear as to whether the local public entity must post this notice in proximity to the swimming area for the notice to have its intended effect.  See 
Barnett, 
171 Ill. 2d at 382 ("A sign was posted at the entrance to the [swimming] facility's locker rooms that stated *** the dates and hours of operation and the general operating rules.")

Dixon correctly contends the Board owed her daughter a "common law duty of reasonable care."  
Barnett, 
171 Ill. 2d at 388.  But there is a distinction between duty and immunity: "*** the existence of a 
duty 
and the existence of 
immunity 
are separate and distinct issues." (Emphasis in original.) 
Blankenship v. Peoria Park District, 
269 Ill. App. 3d 416, 421, 647 N.E.2d 287 (1995).

It follows, then, the issue of supervision at the swimming pool is not relevant here unless there is a fact issue that opens a section 3-108(b) window of exception to the absolute immunity granted the Board by section 3-108(a).  For that to happen, the Board must have designated "by notice posted upon the premises the hours for such use."  If it did not, the plaintiff cannot get beyond section 3-108(a) absolute immunity. 

The only evidence in this record concerning the posted notice comes from Blake, in two short series of deposition questions and answers.  We set out those questions and answers in their entirety:

"Q: Was there any formal announcement made inviting girls to participate in the tryouts? 

A: Yes, yes. 

Q: Was the day in question, which was September 21, 1995, was that the first day of tryouts? 

A: Yes. For girls, yes." 

And, later in the deposition: 

"Q: Did you post any type of formal announcement in certain areas of the school-- 

A: Yeah. 

Q: --with this invitation to come and join the team? 

A: Yes." 

Section 3-108(b) requires "hours" be posted if there is to be an exception to absolute immunity.  "The plain language of section 3-108 is unambiguous."  
Barnett, 
171 Ill. 2d at 391.  We understand the plaintiff does not have to prove her case before trial, but she is required to present some factual basis that would arguably entitle her to judgment.  
Patch v. Persifer, 
214 Ill. App. 3d 108, 110, 573 N.E.2d 834 (1991).  We find no evidence in this record that notice of the hours for use of the pool was posted anywhere on the school premises.  This complete failure of proof is fatal to the plaintiff's case.  Summary judgment was properly entered.

Although section 3-108(a) controls the outcome of this case, we have examined the question of whether the Board failed to provide supervision during the time Tiffany was in the pool.  We note Blake not only was the school's swimming coach and swimming teacher, he was a water safety instructor.  He was on the pool deck when Tiffany was in the water.  We believe that was "supervision" as contemplated by the immunity statute.  That is:

"The plain language of section 3-108(b) unambiguously does not require any particular level or degree of 'supervision.'  The legislature omitted from the plain language of section 3-108 any reference to the quality of supervision required thereunder.  Thus, the legislature must have intended to provide unconditional immunity for liability when supervision is provided."  
Barnett, 
171 Ill. 2d at 392.

The public agency does not lose its statutory protection when the supervision provided is negligent or when it rises to the level of wilful and wanton misconduct.  See 
Barnett, 
171 Ill. 2d at 393; but see Pub. Act 90-805, eff. December 2, 1998 (amending 745 ILCS 10/3-108 (West 1994)).

Had Blake and the volunteer lifeguard left the pool area while Tiffany was in the water the facts would fall within 
Blankenship, 
269 Ill. App. 3d at 418-19: "*** [t]his was not mere inattention or a momentary lack of vigilance; it was a complete absence of supervision."  In that case, there would be no "supervision."

The facts here are less severe than those in 
Barnett, 
where the lifeguards ignored pleas to help a ten-year-old who hit his head on the diving board and sank to the bottom of the pool: "However, the lifeguards dismissed their pleas and failed to respond, saying that they did not see anyone fall."  
Barnett, 
171 Ill. 2d at 383.

Blake was at the pool, supervising the swimming team tryouts.  A lapse of attention from Tiffany to another swimmer does not change Blake's supervisory status.  There is no fact issue about that. 

CONCLUSION

 
Because the Board is entitled to absolute immunity under section 3-108, we affirm the trial court's grant of summary judgment. 

AFFIRMED.

     Hoffman, and Hall, JJ., concur.

FOOTNOTES
1:   We note the Illinois General Assembly amended section 3-

108 in 1998 to exclude wilful and wanton conduct from the scope of its immunity.  See Pub. Act 90-805, eff. December 2, 1998 (amending 745 ILCS 10/3-108 (West 1994)).