KENNETH MOOREHEAD, Plaintiff-Appellant, v. METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO, Defendant-Appellee (Tunnel Electric Construction Company *et al.*, Defendants).

First District (3rd Division)    No. 1—00—1285

Opinion filed May 9, 2001.

Joseph M. McGovern, of Patrick E. Dwyer & Associates, Ltd., of Chicago, for appellant.

Cassiday, Schade & Gloor, of Chicago (William J. Furey, Jeffrey R. Sandler, Donald F. Ivansek, and Brian A. Schroeder, of counsel), for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

Plaintiff Kenneth Moorehead was injured when he slipped and fell while working as a laborer on a tunnel construction site. Plaintiff filed this action, alleging his injuries were caused by the negligence of the Metropolitan Water Reclamation District of Chicago (Metropolitan), the owner of the project, and Tunnel Electric Construction Company (Tunnel Electric), the company that provided lighting for the project. Metropolitan and Tunnel Electric filed third-party complaints against Perini/ICA/O&G Joint Venture (Perini), the general contractor on the project and plaintiff's employer.

Metropolitan filed a motion for summary judgment. The trial court found the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Act) (745 ILCS 10/1—101 *et seq.* (West 1998)) barred plaintiff's suit against Metropolitan and granted the summary judgment motion. Plaintiff appeals, contending Metropolitan breached its duty to provide a safe work place. Plaintiff also contends Metropolitan breached its duty to provide adequate lighting in his work area. We affirm.

FACTS

Plaintiff began working for Perini in 1994. Metropolitan hired Perini to act as a general contractor on its "Tunnel and Reservoir Plan." Perini hired Tunnel Electric as a subcontractor to provide lighting for the project.

On June 18, 1996, plaintiff was working in one of the "deep tunnels" 180 feet below the ground. Plaintiff's job at the site was to make sure material got in and out of the tunnel shafts.

Though Tunnel Electric usually lit the area with a quartz light and a string of lights, the lights were not working that day. The area where plaintiff was working was in total darkness.

Plaintiff fell while he was unloading a flatbed trailer in the tunnel. During his deposition, plaintiff testified he was carrying materials from the trailer to an area farther down the tunnel using the "monorail" system installed by Perini to transport materials. On his way back to the trailer, plaintiff tried to avoid a platform that he knew was often covered with grease and hydraulic fluid. Plaintiff could not see because it was "pitch black." He was guiding himself along the wall of the tunnel when his right foot slid out from under him. Plaintiff fell and landed on his buttocks and back.

Plaintiff filed this suit several months later. In his first amended complaint, plaintiff alleged Metropolitan:

"a. Carelessly and negligently failed to provide adequate lighting;

b. Carelessly and negligently allowed work to continue when it was aware that the normal artificial lighting system was inoperable;

c. Failed to provide temporary lighting;

d. Failed to provide emergency lighting;

e. Failed to provide hand held flashlights and/or lanterns;

f. Failed to pump water seepage from the walking surfaces of the tunnel;

g. Failed to remove oil from the floor of the work site area;

h. Failed to place the flatbed trailer in a place with adequate lighting;

i. Failed to place the flatbed trailer in a place where the walking surface was free of water and oil;

j. Failed to provide a safe place to work;

k. Failed to repair the electrical lighting system in the tunnel area."

Metropolitan filed a summary judgment motion. In the motion, Metropolitan claimed its only role in the tunnel construction was supervisory. Metropolitan argued section 3—108 of the Tort Immunity Act immunized it from liability based upon a negligent failure to supervise. 745 ILCS 10/3—108 (West 1998). The trial court granted the motion.

## DECISION

Duty to Provide Safe Work Place

Plaintiff contends the trial court erred in dismissing his allegations that Metropolitan breached its duty to provide a safe work place. While plaintiff concedes Perini was primarily responsible for safety at the work site, he contends Metropolitan retained control over safety issues. Metropolitan contends it is absolutely immune from liability under section 3—108 of the Tort Immunity Act. 745 ILCS 10/3—108 (West 1998).

■ Review of the trial court's ruling on a motion for summary judgment is *de novo*. *Lajato v. AT&T, Inc.*, 283 Ill. App. 3d 126, 135, 669 N.E.2d 645 (1996). Summary judgment is proper when the pleadings, depositions, and affidavits on file, construed in the light most favorable to the nonmoving party, establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lajato*, 283 Ill. App. 3d at 135. Interpretation of the Tort Immunity Act is a question of law appropriate for summary judgment. *Dixon v. Chicago Board of Education*, 304 Ill. App. 3d 744, 747, 710 N.E.2d 112 (1999).

■ Section 3—108 of the Act immunizes public entities from injury caused by the failure to supervise activities on public property:

"(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

(b) Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury." 745 ILCS 10/3—108 (West 1998).

Plaintiff does not allege willful and wanton conduct anywhere in the complaint. Instead, plaintiff claims this section of the Act does not bar his suit against Metropolitan because Metropolitan retained "some control" over safety on the work site. Plaintiff points to the provision of the contract between Perini and Metropolitan which requires Perini to prepare a "Site Safety Plan" and make it available to Metropolitan's chief engineer. Plaintiff also refers to provisions in the contract requiring Perini to submit design plans to Metropolitan's engineer in some instances and a provision requiring Perini to comply with Metropolitan's safety rules.

Plaintiff's contentions are not supported by the contract as a whole. The contract specifically says:

**"Safety**

(22) [Perini] shall be responsible for the safety of [its] employees, the Water Reclamation District's personnel and all other personnel at the site of the work. [Perini] shall be solely responsible for the adequacy and safety of all construction methods and the safe prosecution of the work.

[Perini] shall have a written Site Safety Plan prepared by a Safety Professional, shall have a Safety Professional or his trained Safety Representative(s) on the job at all times while work is in progress, shall have a documented Safety Training Program and shall have a Safety Work Method Check List System.

[Perini] shall stop work whenever a work procedure or a condition at a work site is deemed unsafe by the Safety Professional or his trained Safety Representative."

While the contract between Perini and Metropolitan requires Perini to submit the name of its safety professional to Metropolitan

for approval and lists requirements for the safety professional's qualifications, the terms of the contract indicate Perini is solely responsible for executing safety precautions on the site. The minimal amount of control retained by Metropolitan under the contract is the essence of a supervisory relationship—Metropolitan retained the right to oversee the project and the safety measures instituted by Perini.

Plaintiff also argues that Metropolitan's active participation in "quality assurance" inspections shows that its role extended beyond merely supervisory. Plaintiff refers to the following portions of the deposition testimony of Ray Brais, Perini's superintendent:

"Q. Would those be the people that would deal with Harza for the most part?

A. Yes and no. I mean, Harza would deal with the superintendents and with me on technical aspects of the job.

Q. Did you have any contact with anybody from the District?

A. On a daily basis, yes.

Q. Who was that?

A. Site inspectors was—well, the lead over there was Bill Shepke. Then we had different inspectors.

Q. What type of things were they inspecting?

A. The District themselves was [sic] inspecting mostly the concrete work. So cleanup work, concrete work finishing. Finishes. All that quality assurance type inspection.

Q. Did the District have anybody who came out on safety issues?

A. I don't remember anybody being assigned to it, but they would talk about it as bringing up certain issues if they thought they were important."

And, earlier in his deposition:

"Q. Would they do things like surveying?

A. No. Inspection, and they would decide certain aspects of rock molding, certain technical items that needed to be put in at the discretion of the owner, that type of thing."

Plaintiff seems to be arguing that a party's role will be deemed "supervisory" under the Act only if the party did not actively participate in any aspect of the project.

In *Longfellow v. Corey*, 286 Ill. App. 3d 366, 368, 675 N.E.2d 1386 (1997), the appellate court rejected the argument that a "supervisory" role does not allow for any active participation. The *Longfellow* court found, for purposes of the Tort Immunity Act, the term "supervision" includes coordination, direction, oversight, implementation, management, superintendence, and regulation. *Longfellow*, 286 Ill. App. 3d at 370. The *Longfellow* court said:

"Because supervision often involves some level of active participation, it would be illogical to provide immunity to a public employee

for passively overseeing an activity, yet withhold immunity the moment such an employee undertakes *any* active role in an activity that employee is supervising." (Emphasis in original.) *Longfellow*, 286 Ill. App. 3d at 370.

■ We find that the minimal amount of control retained by Metropolitan over safety issues and quality assurance does not exceed the bounds of a supervisory role for purposes of section 3—108. Metropolitan's only active participation in the project focused on overseeing Perini's work and enforcing the terms of the contract. A party cannot be said to have exceeded a supervisory role simply because it acted to assure itself that the terms of its contract were being met.

Duty to Provide Lighting

■ Plaintiff also contends the trial court erred in dismissing the allegations that Metropolitan failed to provide adequate lighting. Again, while plaintiff recognizes Perini and Tunnel Electric were primarily responsible for lighting at the site, he claims Metropolitan retained enough control over lighting to be held liable.

Plaintiff relies on a provision of the contract that states, "[A]ny parts of the [electrical] equipment that become damaged or dangerous shall be immediately removed from service and repaired or replaced as directed by [Metropolitan's] engineer without any additional cost to [Metropolitan]."

When viewed in the context of the contract as a whole, the provision referred to by plaintiff does not support his contention. The contract specifically states, "[Perini] shall provide and maintain all temporary electrical power, lighting and water services during all construction." Perini recognized this obligation and hired Tunnel Electric as a lighting subcontractor.

The contractual provision referred to by plaintiff simply shows Metropolitan retained control over the decision whether to have damaged equipment repaired or to have it replaced. Again, this decision is supervisory in nature. *Longfellow*, 286 Ill. App. 3d at 370.

CONCLUSION

A review of the record shows Metropolitan's only role in the tunnel construction was supervisory. Section 3—108 provides immunity to any injuries arising out of Metropolitan's negligent failure to supervise the tunnel project. 745 ILCS 10/3—108 (West 1998); *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 376, 687 N.E.2d 1042 (1997). The

trial court's ruling granting Metropolitan's summary judgment motion is affirmed.

Affirmed.

CERDA and BURKE, JJ., concur.