JAMES GUSICH *et al.*, Plaintiffs-Appellants, v. METROPOLITAN PIER AND EXPOSITION AUTHORITY *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—01—0307

Opinion filed December 14, 2001.

Powers Rogers & Smith, P.C., of Chicago (Thomas M. Power and Kenneth J. Merlino, of counsel), for appellees.

Kilgallon & Carlson, of Chicago (Michael B. Kilgallon, of counsel), for appellant Metropolitan Pier & Exposition Authority.

Wolf & Wolfe, Ltd., of Chicago (Patrick R. Grady and Brian Flood, of counsel), for appellant Windy City Maintenance.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiffs, James and Mary Gusich, appeal the order of the circuit court granting summary judgment for defendants, Metropolitan Pier & Exposition Authority and Windy City Maintenance, on plaintiffs' negligence action. On appeal, plaintiffs argue that questions of material fact exist, precluding summary judgment. We reverse the order granting summary judgment for Windy City Maintenance and remand for further proceedings, and we affirm the order granting summary judgment for Metropolitan Pier & Exposition Authority.

On August 15, 1996, plaintiff James Gusich (plaintiff) was employed by Lewellen and Best Displays, Incorporated, to set up, dismantle, and recrate convention exhibits at the 1996 Hardware Show at McCormick Place. While loading plexiglass into crates on a loading dock at McCormick Place, plaintiff allegedly stepped on a soda can, slipped, and fell off the dock, injuring himself.

Plaintiffs filed a negligence action against defendant Metropolitan Pier & Exposition Authority, the owner and operator of McCormick Place, and against codefendant Windy City Maintenance, which had contracted with Metropolitan Pier & Exposition Authority to inspect and clean the loading dock. Plaintiffs alleged that defendants were negligent in failing to properly clean the debris on the loading dock. The circuit court granted summary judgment for both defendants, finding that Metropolitan Pier & Exposition Authority was immune under the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/1—101 (West 1996)) and that Windy City Maintenance had neither actual nor constructive notice of the soda can that allegedly caused plaintiff to fall. Plaintiffs file this timely appeal.

■ Summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, the pleadings, depositions, and admissions on file reveal that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998). The standard of review in cases involving summary judgment is *de novo. Ragan*, 183 Ill. 2d at 349.

■ First, we address the circuit court's grant of summary judgment for defendant Metropolitan Pier & Exposition Authority (Metropolitan). The circuit court concluded that Metropolitan acted in a strictly supervisory capacity with respect to the cleanup, as the evidence showed that Metropolitan's role was to direct the Windy City Maintenance cleaning crews how and where to clean. Accordingly, the circuit court granted summary judgment for Metropolitan pursuant to section 3—108 of the Tort Immunity Act, which provides that neither a local public entity nor a public employee is liable for an injury caused by negligent supervision of an activity on or the use of any public property. See 745 ILCS 10/3—108 (West 1996); *Henrich v. Libertyville High School*, 289 Ill. App. 3d 809, 813 (1997), *aff'd*, 186 Ill. 2d 381 (1998).

Plaintiffs do not dispute that Metropolitan is a local public entity or that the site of the accident, the loading dock at McCormick Place, is public property. Rather, plaintiffs argue that Metropolitan acted in something other than a supervisory capacity. Specifically, plaintiffs argue that Metropolitan ordered Windy City Maintenance on August 15 not to clean the loading docks but to clean the bathrooms instead. Plaintiffs argue that by giving such an order, Metropolitan acted not as a supervisor but as one that has "complete control" of the work being done on the premises and, thus, section 3—108 does not immunize Metropolitan from liability.

■ Plaintiffs waived review of this issue by failing to cite any authority in support of their argument. 188 Ill. 2d Rs. 341(e)(7), (f). However, waiver is a limitation on the parties, not the reviewing court. *American Federation of State, County & Municipal Employees, Council 31 v. County of Cook*, 145 Ill. 2d 475, 480 (1991). We choose to address the issue on its merits.

■ Resolution of this issue requires us to construe section 3—108. The construction of a statute is a question of law for which we conduct *de novo* review. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *Robinson*, 172 Ill. 2d at 457. The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *People v. Tucker*, 167 Ill. 2d 431, 435 (1995).

■ Section 3—108 immunizes local public entities that negligently "supervise" activity on public property. 745 ILCS 10/3—108 (West 1996). The plain and ordinary meaning of "supervise" is to "oversee with the powers of direction and decision the implementation of one's own or another's intentions." Webster's Third New International Dictionary 2296 (1986). The undisputed facts show that on August 15 Metropolitan oversaw Windy City Maintenance's work and directed the Windy City Maintenance cleaning crews as to where to clean. Metropolitan's actions on August 15 fall within the plain and ordinary meaning of "supervise"; accordingly, section 3—108 immunizes Metropolitan from liability as a matter of law.

Our holding is supported by *Moorehead v. Metropolitan Water Reclamation District*, 322 Ill. App. 3d 635 (2001). In *Moorehead*, the plaintiff was injured when he slipped and fell while working as a laborer for Perini/ICA/O&G Joint Venture (Perini), the general contractor on a tunnel construction site. *Moorehead*, 322 Ill. App. 3d at 636. The plaintiff filed an action alleging in part that his injuries were caused by Metropolitan Water Reclamation District of Chicago (the District), the owner of the project. *Moorehead*, 322 Ill. App. 3d at 636. The trial court granted the District's motion for summary judgment based on section 3—108. *Moorehead*, 322 Ill. App. 3d at 637. On appeal, the plaintiff argued that section 3—108 did not apply because the District retained "some control" over the work site. *Moorehead*, 322 Ill. App. 3d at 638. The plaintiff pointed to the provision of the contract between Perini and the District that required Perini to prepare a "Site Safety Plan" and make it available to the District's chief engineer. Plaintiff also referred to provisions in the contract requiring Perini to submit design plans to the District's engineer in some instances and a provision requiring Perini to comply with the District's safety rules. *Moorehead*, 322 Ill. App. 3d at 638. Plaintiff argued that by actively participating in the project, the District acted in more than a supervisory capacity and therefore section 3—108 did not apply. *Moorehead*, 322 Ill. App. 3d at 639.

The appellate court rejected the argument that a "supervisory" role does not allow for any active participation. *Moorehead*, 322 Ill. App. 3d at 639. The court noted that for purposes of section 3—108, the term "supervision" includes coordination, direction, oversight, implementation, management, superintendence, and regulation. *Moorehead*, 322 Ill. App. 3d at 639. The court held that the "amount of control retained by [the District] under the contract is the essence of a supervisory relationship—[the District] retained the right to oversee the project and the safety measures instituted by Perini." *Moorehead*, 322 Ill. App. 3d at 639. The court affirmed the grant of summary judgment for the District. *Moorehead*, 322 Ill. App. 3d at 640-41.

Similarly, here, the amount of control retained by Metropolitan is the essence of a supervisory relationship—Metropolitan retained the right to oversee and direct the cleanup of McCormick Place. Accordingly, section 3—108 bars plaintiffs' cause of action. We affirm the circuit court's grant of summary judgment for Metropolitan.

The circuit court also granted summary judgment for Metropolitan pursuant to section 3—106 of the Tort Immunity Act (745 ILCS 10/3—106 (West 1996)). As a result of our disposition of this case, we need not address the applicability of section 3—106.

■ Next, we address the circuit court's grant of summary judgment for Windy City Maintenance on plaintiffs' negligence claim. To assert a claim for negligence, plaintiffs must plead and prove that Windy City Maintenance breached a duty of care owed to plaintiffs and that the breach of duty proximately caused plaintiffs' injuries. *Grove v. City of Park Ridge*, 240 Ill. App. 3d 659, 661 (1992).

Plaintiffs allege that Windy City Maintenance was contractually bound to provide daily cleanup of McCormick Place, including the loading dock. Plaintiffs further allege that in violation of its contract, Windy City Maintenance negligently failed to clean the debris on the McCormick Place loading dock on the day of plaintiff's fall.

Windy City Maintenance argues that summary judgment was properly entered in its favor because plaintiffs presented no evidence of any debris in the area where plaintiff fell. We disagree, as plaintiff testified in his deposition that he fell on debris (specifically, a soda can) on the loading dock. Plaintiff testified in pertinent part as follows:

"Q. Now, you said that you tripped or stepped onto the pop can and then fell off the dock, correct?

A. Yes.

Q. Can you describe in terms of—was it—which foot stepped onto the pop can?

A. My left.

Q. And did your left foot then slip forward on the pop can or did you trip over the pop can?

A. Can slipped and I slipped with the can.

Q. Okay. So you and the can both went off the edge?

A. Yes.

***

Q. Did you point out to anyone *** the pop can that you slipped on?

A. Yes, I did.

Q. Okay. Who did you point it out to?

A. They asked what happened. I slipped on that pop can over there. The can went flying out when it happened. I told the guy with the camera and that. The can was laying [*sic*] on the ground.

Q. Okay. This was the guy who said he was from McCormick Place that you told that to right after you fell?

A. Whoever the guy was that came out there.

Q. And he said—

A. He asked what happened. I said I slipped on that damn pop can."

Further, plaintiff's supervisor, Ronald Broadbent, testified that he saw debris, including cans and bottles, on the loading dock the day before, and the day of, plaintiff's fall. Specifically, Broadbent testified as follows:

"Q. And did [plaintiff] tell you anything about how he fell?

A. He said that he had tripped on a pop can also.

Q. Did you have an opportunity to see a pop can?

A. There was a lot of garbage on the ground at that point in time.

Q. All right.

A. There was [sic] cans, there was [sic] bottles, there was paper, boards. I mean there was a bunch of stuff on the ground.

***

Q. And when you say in that area, the general vicinity of this dock area that's shown in the photos?

A. Yes.

***

Q. All right. And for the week before this incident, was there this similar type of garbage around the dock area?

A. There was—yeah, there was—there was garbage around that area prior to the show. ***

Q. Was the garbage that you—that was noticeable on the day of [plaintiff's] fall, was it there all that day?

A. From what I could tell, yes.

Q. How about the day before?

A. That's probably when it was created, because that—the day before that was the down, the first day the show broke, and product and everything else was being packed that night. The empties were going back into the building. And usually that does create a lot of garbage and stuff in the aisles and all over the loading docks and areas.

Q. When you say empties, you mean crates?

A. Crates, yes.

Q. Okay.

A. Empty crates.

Q. Now, specifically with regard to cans and bottles, were those types of debris around the day before?

A. Yes."

■ Taken together, and viewed in the light most favorable to the

plaintiff (the nonmovant), plaintiff's and Broadbent's testimony raises questions of material fact as to: (1) whether Windy City Maintenance had or should have had notice of the garbage and debris during its daily cleanup of the loading dock; (2) whether Windy City Maintenance breached its duty of care by failing to clean away said garbage and debris; and (3) whether Windy City Maintenance's breach of duty proximately caused plaintiff to slip and fall.

Windy City Maintenance argues that it is not liable in negligence because it was ordered by Metropolitan to clean the bathrooms instead of the loading dock on August 15. However, questions of material fact exist regarding: (1) whether the debris at issue was present on the loading dock prior to August 15 and, thus, whether the debris should have been cleaned prior to plaintiff's fall; and (2) whether, under the contract, Windy City Maintenance was obligated to clean the loading dock on August 15 notwithstanding the directive concerning the cleaning of the bathrooms. Accordingly, we reverse the order granting summary judgment for Windy City Maintenance on plaintiffs' negligence complaint and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

BUCKLEY and O'MARA FROSSARD, JJ., concur.